Nott J.
The first question in this case is, whether judgment and'execution creditors shall retain the liens which they have acquired, on the property of an irisolvent debtor, at the time he applies for the benefit of the act, or whether-they are divested by such application, and are required to come in on a footing with other creditors and receive a dividend in proportion to. their respective demands?
If this were a new question, perhaps it might have Been entitled to the consideration which has been bestowed-upon it: But the act has befen in operation for upwards of sixty years; and, as far as we have been able to obtain information respecting the construction, which has hitherto been given to it, we are induced to believe that it has been favorable to the lien creditors: And a uniform practice for such a length oí time ought to be conclusive of the question. It furnishes the highest evidence that we can now have of the early decisions of our courts upon the subject, and is entitled to all the respect which would be due to the most solemn decision of this court; and I do not know but we should have fulfilled our duty as well by resting the case upon that ground alone, as by attempting now to justify that construction of the act.
I am, nevertheless, of opinion that it can very well be maintained.
It must be admitted, that if the insolvent debtors’ act had never been passed, a debtor could not by assigning his *63 property have defeated any prior liens; and it is hot perceived that the act contains any provision, by which the relative situation of debtor and creditor is at all changed, in that res ! pect. The act has'prescribed no method by which a creditor can compel his debtor to surrender his property for the payment of his debts; neither does it enjoin it upon the debtor as a duty to do so. The ássignmenl is a voluntary act of the party and not an act of the law; and he cannot by his own act relierve his property from pre-existing liens. Arresting the body on a ca. sa. is equally voluntary on the part of the creditor; it is not a process allowed by the act for the purpose of effecting a surrender of the property; neither is -a surrender the necessary result. A creditor would have been entitled to a ca. sa. if the act had never .been passed, and the debtor might have assigned his estate for the payment of his debts. But such an assignment could not have affected the rights of others, neither is there any thing in the act to . give it that effect now. The object of the law is to relieve thé debtor from perpetual imprisonment. It, therefore, provides hat when he shall have surrendered all he has to his creditors, he shall be discharged, as well from his debts as from.itn-prisonment: But it does not deprive the creditors of any security which they had before obtained.
. It is contended that by the act, the debtor is required, to assign aU his property, and that the property so assigned^ shall he vested in the assignees, for the benefit of all the cred* itors; from whence the conclusion is drawn, that as all his property becomes vested in the assignees, there can be none upon which the judgments'and -executions can operate.
But I must here again repeat that the act does not require him to assign his property. It- only provides, that if he choose to do so, he shall assign the whole and not a part. The assignees can acquire no better right than the assignor possessed himself. The rights of the debtor are transferred to the assignee's, and nothing more.
It is also further contended, that the act declares that *64 the assignees “may take possession of the property, so assigned, or sue for the same in their own names, in the same manner as commissioners of bankruptcy can or lawfully may do by the laws or statutes of Great Britain,” it was intended to adopt all the provisions of those statutes. The same inference is also drawn from the fact, that some of the clauses of out act, appear .to have been copied from the British' bankrupt laws.
But introducing a specific provision from those statutes will not authorize the conclusion that the statutes themselves were intended to be made, of force. Neither can we infer, from the adoption of a single clause, an intention to give operation here to the whole system of British bankrupt laws. It would rather lead to a contrary conclusion, Upon the well known legal maxim, that the express adoption of a specific provision of an act amounts to a virtual exclusion of all the rest, — expressio unius, exclusio alterius. The reference of the act, to the bankrupt laws of Great Britain, relates specifically to the power of the assignees to take the property or to maintain actions for the recovery of the same, and to that only. This construction also best comports with the gqod faith of the legislature. A creditor when he has obtained 8 judgment, is aware of the hold he has upon the property of his debtor. He rests confidently .upon the security he has acquired; and we ought not to indulge the belief that the legislature intended to destroy the security which the law thus afforded to judgment creditors, in favour of subsequent creditors, without the most unequivocal expression ofsucb intention. But no expression is found in the act: .The fair deduction, therefore, is, that all pre-existing rights and obligations remain unimpaired. The assignees are substituted in the place of the debtor with all his rights and privileges, and take the property subject to all the incumbrances, liens, defect of title, &c. to which it was subject in his hands. Any person may assign his property, notwitstanding judgments, executions and mortgages may be hanging over it, But *65 the assignee must take it subject to those claims. He may redeem it from the incumbrances, and his title is good. It cannot be effected by intervening judgments. Such is. the extent of the right which the assignees,'in this case, have acquired. The decision of the Recorder on this point, is, therefore, reversed.
Another question has been .raised in the course of the argument.^ That is, whether the party who has taken the body of the defendant on a ca. sa. has thereby lost the lien which he before had on the property?
Before the statute 21s/. James, I. c. 24. taking‘‘the body in execution was considered as a satisfaction of the debt. If, therefore, the- defendant died in gaol, the debt was lost. By that statute, it was provided that thé-plaintiff might still have nfi.fa. against the goods of his deceased debtor. The statute itself, however, preserves the rights acquired by intermediate transfers. And, if it had contained no such provision, it is not improbable that such would have been its-construction. - ’ So where a person is discharged by privilege of parliament, a statute was necessary to subject his goods to the] operation of an execution afterwards, (2 Bacon, p. 7lB. title Execution,) viz: 1st James, I. c. 13. If the defendant in this case/lfad not taken the benefit of the'act, the plaintiff certainly would have lost his lien on her property. He did not resort to the ca. sa. for the purpose of compelling her to surrender her estate; but to coerce the payment of his money. .He voluntarily let go the hold that he had upon her property for what he considered better security. He made his election, and could not by. any act of his own, divest the liens, which others acquired in the mean time. The act makes no such provision. It preserves the debt but not the lien. A contrary construction would be attended with the most mischievous consequences. It would be setting a suaré, in which the most honest, bona fide, purchasers might he caught, to give to a judgment such a retrospective operation. The court, therefore, are of opinion that the lien which the plain- *66 íifl'lostby tájúng the body of the defendant was not restored by her discharge from imprisonment. The judgments and executions must first be paid in their'regular order out of the proceeds óf the property, on which they had a -lien, previous to theassignment. If the'defendant'had atíy funds on which the lien creditors have no hold, or if there are any after those are satisfied, they must be distributed among the creditors according to the provisions of the act..
Messrs. -Kingr Frost, ford and DeSaussure, for Appellants.
Mr. Pejjooti, for Appellee.